IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MITZI J. GOAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:16-CV-1332 |
| | ) | |
| NORTH CAROLINA FARM | ) | |
| BUREAU MUTUAL INSURANCE | ) | |
| COMPANY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

In the complaint, the plaintiff, Mitzi Goad, asserts claims under Title VII for constructive discharge, contending that the defendant created a hostile work environment based on her gender, Doc. 1 at ¶¶ 26-38, and in retaliation for her complaints about sexual harassment. ¶¶ 39-47. She has offered evidence that she was sexually harassed by a co-worker, and that after she complained to her supervisor, the supervisor joined in the harassment and allowed the co-worker to constantly bully and harass Ms. Goad. After several months of this harassment and retaliation, Ms. Goad quit her job. Because she has offered evidence to raise disputed questions of material fact, the defendant-employer's motion for summary judgment will be denied.

Title VII makes it unlawful for an employer to discriminate against "any individual with respect to his compensation, terms, conditions, or privileges of employment" because of the individual's race, gender or national origin. 42 U.S.C. §

2000e-2(a)(1). "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 174 (4th Cir. 2009) (quotation marks omitted). In order to prevail on a Title VII hostile work environment claim, a plaintiff must show the underlying conduct was (1) unwelcome, (2) based on the plaintiff's protected class, (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive atmosphere, and (4) imputable to the employer. *Id.* at 174-75; *accord Boyer-Liberto v. Fontainebleau Corp.,* 786 F.3d 264, 277 (4th Cir. 2015) (en banc); *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc). Ms. Goad contends that she was constructively discharged as a result of the hostile work environment.

Here, the defendant does not dispute that the sexual advances by a co-worker and sexual "jokes" by her supervisor were unwanted. Nor does the defendant dispute that the co-worker's retaliatory bullying and false accusations were unwelcome.[1] Similarly, Farm Bureau does not contest that the unwelcome conduct was based on Ms. Goad's protected status.[2]

---

[1] Indeed, Farm Bureau ignores the evidence that after Ms. Goad complained about the co-worker's unwanted sexual advances, the co-worker began harassing Ms. Goad in other ways.

[2] Farm Bureau does not dispute, or even address, that the co-worker's continuing harassment raises the inference that the retaliation was based on Ms. Goad's failure to comply with the harasser's sexual demands, on Ms. Goad's complaints to the supervisor about the harasser's sexual demands, or both. Either way, there is circumstantial evidence that the unwelcome actions were based on Ms. Goad's protected status as a woman and as a person who had complained about discrimination. *See, e.g.*, *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) (noting that "Title VII prohibits an employer from both (i) discriminating against an employee on the basis of sex, and (ii) retaliating against an employee for complaining about prior discrimination or retaliation"); *see also Freeman v. Dal-Tile*, 750 F.3d 413, 419-21 (4th

Farm Bureau does contend that Ms. Goad has presented no evidence of the third and fourth elements necessary to establish the hostile work environment claim.

As to the third element, Ms. Goad has presented evidence from which a jury could conclude that the atmosphere was abusive. She has testified that a co-worker repeatedly made unwanted sexual suggestions to her and that when she began complaining about the unwanted sexual invitations from her co-worker, her supervisor first downplayed the harassment and made a joke about it, Doc 16-1 at 6, and on another occasion he completely ignored the complaint. Doc. 16-1 at 7. He also suggested to Ms. Goad that she should give in to the harassment and have sex with the co-worker, Doc. 16-1 at 8, and that she should "make it work" with the co-worker because of the co-worker's sales. Doc. 19 at 64. The supervisor did speak with the co-worker about Ms. Goad's complaints and the co-worker eventually stopped making sexual comments, but thereafter the co-worker began making false accusations against Ms. Goad, complaining about her, staring at her, and on one occasion becoming physically threatening so that another employee had to step in. Ms. Goad continued to complain to her supervisor on an almost daily basis, and the supervisor always promised that the situation was being "worked on." The supervisor also told Ms. Goad that she should not raise her concerns with higher-ups, as that would make it worse for her. The situation with the co-worker became so bad that Ms. Goad kept a loaded gun on her desk and her other co-workers would not leave her

---

Cir. 2014) (holding that lewd comments about sex and women's bodies along with gender-specific epithets was harassment based on gender).
.

3

alone in the office with the harassing co-worker. In addition, her supervisor began making repeated sexual and overly personal comments to her, many in front of other co-workers.

Eventually, the stress of dealing with the work environment and fear for her safety forced Ms. Goad to leave her employment. She has since been diagnosed with depression and a trauma-related stress disorder.

The evidence must be viewed in its totality, and whether harassment is sufficiently severe or pervasive is "quintessentially a question of fact." *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 207-09 (4th Cir. 2014). The plaintiff's evidence here is sufficient to raise a disputed question of material fact as to whether the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993)).

As to the fourth element, an employer is liable for a hostile work environment if it "knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree*, 335 F.3d at 333–34. Here, Ms. Goad has presented evidence that she repeatedly complained to her supervisor about the erratic and retaliatory conduct of her co-worker, who repeatedly made false accusations and otherwise bullied Ms. Goad as a result of Ms. Goad's complaints of sexual harassment and of Ms. Goad's refusal to have sexual contact with the harasser. Beyond assuring her that he was "working on it," the

4

supervisor did not stop the continuing harassment from the co-worker.  Instead, he began harassing Ms. Goad himself.

From this evidence, a jury could conclude that the employer had notice and failed to respond with remedial action reasonably calculated to end the harassment.  The case is similar to *Freeman v. Dal-Tile*, where the plaintiff presented evidence that her supervisor was aware of the major incidents of harassment, that the plaintiff had specifically complained to the supervisor about some of the derogatory comments, and that the supervisor had "simply rolled her eyes" and had taken no effective action to halt the harassment." 750 F.3d at 423-24.  The court noted that such evidence "if proven true," shows that the employer through its agent, plaintiff's supervisor, had actual knowledge of the harassment and failed to take prompt remedial action, so that summary judgment for the employer was properly denied.  *Id.*; *see also EEOC v. Sunbelt Rentals*, *Inc.*, 521 F.3d 306, 319 (4th Cir. 2008); *see also Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013) (holding that if the harassing employee is the victim's co-worker, the employer is liable "if it was negligent in controlling working conditions."); *Ocheltree,* 335 F.3d at 333–34 (4th Cir. 2003) (en banc) ("[T]he employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it.").

Farm Bureau contends that it cannot be charged with constructive knowledge because it provided reasonable procedures for victims to register sexual harassment complaints and Ms. Goad did not comply with those procedures.  Certainly "[a]n employer's adoption of an effective anti-harassment policy is an important factor in determining whether it exercised reasonable care to prevent any sexually harassing

5

behavior." *Smith v. First Union Nat'l Bank*, 202 F.3d 234, 244 (4th Cir. 2000). When a supervisor creates the hostile environment, the employer has an affirmative defense if it shows "that [it] exercised reasonable care to prevent and correct promptly any sexually harassing behavior," and "that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher* 524 U.S. at 807. While "[n]o affirmative defense is available . . . when the supervisor's harassment culminates in a tangible employment action, such as discharge," *id.* at 808, the defense is available in constructive discharge cases such as this one. *Pennsylvania State Police v. Suders*, 542 U.S. 129, 148-149 (2004).

Here, the parties agree that Farm Bureau had a policy against workplace harassment which prohibited sexual harassment. *See* Doc. 16-1 at 3. The policy urged employees to report any such incidents to the employee's supervisor, human resources, or the general counsel. *Id.*

To the extent Farm Bureau raises this defense as to the conduct of the co-worker, it does not apply. The *Faragher* defense applies when a supervisor creates the hostile work environment; the negligence test set forth in *Freeman, Vance*, and other cases cited *supra* applies when it is a co-worker who creates the hostile environment. In any event, there is evidence that Ms. Goad repeatedly reported the retaliatory harassment by the co-worker to her supervisor, who did little to nothing to stop the harassment. Thus, to the extent her hostile work environment claim is based on the conduct of her co-employee, Ms. Goad complied with the policy and the defense is not applicable.

To the extent the conduct of her supervisor contributed to the hostile work environment, Ms. Goad testified that she did not report the harassment by her supervisor to human resources or the general counsel because "she had witnessed firsthand" that another woman in the office had been blackballed after complaining. Doc. 16-1 at 3. Her supervisor confirmed this view, telling her it would be worse for her if she complained outside the office. This raises a question of fact as to whether Ms. Goad's failure to report the harassment by Mr. Robertson to human resources or the general counsel was reasonable. Moreover, her supervisor's initial reactions to the sexual harassment by the co-worker – making jokes, ignoring or downplaying the problem, and suggesting Ms. Goad "go along" with the harasser – and his continuing failure to address the co-worker's retaliatory conduct raise a question of fact as to whether Farm Bureau's policy was effective.

For similar reasons, Ms. Goad has raised material questions of disputed fact as to her retaliation claim. The elements of a prima facie claim for retaliation are: (1) engagement in a protected activity; (2) materially adverse action; and (3) a causal link between the protected activity and the employment action. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010).

Here, Ms. Goad has presented evidence that she engaged in protected activity when she complained about sexual harassment by a co-worker to her supervisor, and that thereafter her supervisor did little to nothing to stop a continuing pattern of retaliatory conduct by the co-worker against Ms. Goad and in fact began harassing Ms. Goad himself, to such an extent that a hostile work environment was created. The retaliatory

conduct by the co-worker and the supervisor began soon after Ms. Goad began complaining, and continued over several months, and was accompanied by the supervisor's statements that reporting the harassment outside the office would "make things worse" for her. A reasonable employee would be dissuaded from complaining about sexual harassment if such retaliation was not prohibited. *See Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 67-69 (2006) (holding in a retaliation case that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," and that any conduct which might dissuade a reasonable worker from making or supporting a charge of discrimination can constitute retaliation.).

Finally, Farm Bureau contends that there is no evidence of harassment within the five day period before Ms. Goad quit on July 16, 2015, and as her EEOC charge was filed on January 7, 2016, any incidents before that date are time-barred. Ms. Goad brings a constructive discharge claim, and Farm Bureau's argument is inconsistent with the Supreme Court's decision in *Green v. Brennan*, 136 S. Ct. 1769, 1777 (2016). In that case, the Supreme Court held that time limitations on a constructive discharge claim did not begin to run until the employee ended her employment. Moreover, Ms. Goad testified that the co-worker's retaliatory harassment continued on a daily basis.

For the reasons stated, it is **ORDERED** that the defendant's motion for summary judgment, Doc. 15, is **DENIED**.

This the 4th day of December, 2017.

UNITED STATES DISTRICT JUDGE